IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Case No. 06-10072-01, 03-JTM |
| ANTHONY MICHAEL ROMERO and MYRON C. WORTHON, | |
| Defendants. | |

MEMORANDUM AND ORDER

On March 3, 2006, law enforcement officers from the Finney County Sheriff's Office, the Kansas Highway Patrol, and the DEA, acting in coordination, stopped two vehicles traveling east on U.S. Highway 50. Deputy Tim Schultz of the Sheriff's Office, while observing the Garden City Travel Plaza for possible drug activity, had seen a van with New Jersey license plates meet with a silver Lexus with Arizona license plates. The two cars later left the Travel Plaza together.

Schultz followed the two vehicles, which made several turns together through Garden City, and then left the town on the highway. Schultz by radio learned from the DEA that the van licensed in New Jersey had been rented in Arizona. The van was scheduled to be returned to the rental company the next day in Atlanta, Georgia. The Lexus was registered to the defendant Anthony Romero in Scottsdale, Arizona.

DEA Agent Mike Keesling in Garden City radioed the Kansas Highway Patrol to observe the vehicles and stop them if they observed any traffic infractions.

Highway Patrol Trooper M.A. Racy was driving west on Highway 50, when he saw the two vehicles approaching from the opposite direction, and saw that the van was traveling at about 55 miles per hour but was only about one car length behind the vehicle in front of it. Racy turned around and stopped the van for violating K.S.A. 8-1523(a).

The defendant Myron Worthon was the only person in the van. The rental papers indicated to Racy that Worthon was not an authorized driver of the van. The renter and only authorized driver was one Albert Salas of Glendale, Arizona.

Worthon told Racy that he was driving to Atlanta to report for duty for a tour of service in Iraq, but he was not going by a direct route because he was going to visit his parents in Springfield, Missouri. He told Racy that his name was not in the rental papers because he didn't have a credit card. Racy, however, had seen a Visa credit or debit card in Worthon's wallet when he produced his driver's license.

The officers called the rental company, which asked them to take custody of the van. Racy asked Worthon to step to his patrol vehicle, where he issued a warning citation. He also told him the van was being seized. When asked, Worthon told Racy that the property in the van was his. Racy agreed to drive Worthon to a hotel in Dodge City. He also asked if he could unload Worthon's property from the van. Worthon said, 'That's fine."

At some point around this time, Highway Patrol Truck Inspector Jantz had also arrived. There were several military-style duffle bags in the van. While unloading them, Racy felt in one a large, square hard block which be believed, in light of the circumstances of the case and his prior experience, was a tightly-wrapped plastic bundle of illegal drugs. The officers opened the bags to find, along with National Guard uniforms containing the names Worthon and Romero, 13 bundles

2

containing 245 pounds of marijuana. The officers also noted that the van had a two-way radio which was set to Channel 5.

The Lexus was stopped for a traffic infraction at about the same time as the van.  Defendants Romero and  Smith were in the Lexus.  Romero and Smith were arrested in connection with the discovery of drugs in the van.  The officers found no drugs in the Lexus.  The Lexus also had a two-way radio which was set to Channel 5.

The court specifically finds that Trooper Racy and Deputy Schultz testified credibly.

The search has been challenged by suppression motions filed by both Romero and Worthon. The arguments are similar with respect to each.  Both argue that there was no probable cause to stop the vehicles under Kansas law.  Both argue that there was no basis for Racy's feeling of the duffel bags as they were pulled out of the van.  The government argues that the stop and the search were legal.  It also argues that the defendants lack standing to challenge the stop or search.

The government's standing argument rests on a series of Tenth Circuit cases, *United States v. Jones*, 44 F. 3d 860, 871 (10th Cir. 1995), *United States v. Roper*, 918 F. 2d 885 (10th Cir. 1990), *United States v. Obregon*, 748 F. 2d 1371 (10th Cir. 1984), which hold that the defendants did not have standing to challenge the search of rented vehicles where they were not renters or authorized drivers.  Neither defendant addresses these cases.  Worthon presents no discussion of standing at all; Romero presents only a brief discussion which fails to mention the cases cited above.  Instead, he argues only generally under *United States  v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996) that a passenger who has been illegally detained has standing to challenge a subsequent search if it is deemed to be a fruit of the illegal detention.  But, of course, Romero was not a passenger in the van. He was neither a renter, authorized driver, nor even passenger in the van.  *Shareef* is inapplicable.

The court finds that under *Jones*, *Roper*, and *Obregon*, the defendants Worthon and Romero lack standing to challenge the search of the duffel bag, and that defendant Romero lacks any standing to challenge the stop of the van..

Even if the court were to find that standing was not in issue and address the matter on the merits, the court would deny the motions.

K.S.A. 8-1523(a) provides

The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

Both defendants point out the absence of any explicit standards in statute, but it does not follow that there was no probable cause to stop the van.  Neither defendant has pointed to any road or weather conditions which would have affected the situation.  The defendants state that their vehicles were in a line of several which had formed behind a semi-trailer on the two-lane road, and that the officers did not stop any of the other vehicles.  This may be true, but it is irrelevant, since in simply reflects that a subjective motivation of the officers was their investigation of potential drug activity.

The controlling issue for the court is not the officers' subjective motive but whether there was in fact a violation of K.S.A. 8-1523. Applying this Kansas statute, the Tenth Circuit has held that such an officer's visual observation of a vehicle traveling at a high speed and close distance from the preceding vehicle, "while not necessarily sufficient to convict, is sufficient to provide a reasonable suspicion to effectuate a traffic stop." *United States v. Vercher*, 358 F. 3d 1257, 1262-1263 (10th Cir. 2004).  What is important is not whether a violation of the statute could be independently proven, but whether the officer had a reasonable suspicion of following too closely.

4

*Id.* The court finds that under the facts of the case as established at the hearing Trooper Racy had probable cause to stop the van driven by Worthon for following too closely.

The defendants separately argue that Racy's manipulation of the duffle bags was contrary to *Bond v. United States*, 529 U.S. 334, 336-337 (2000). In *Bond*, the defendant was a passenger on a bus which had been stopped at an immigration checkpoint. An immigration officer boarded the bus, confirmed the immigration status of the passengers, and on departing the bus began to "squeeze the soft luggage which passengers had placed in the overhead storage space above the seats." 529 U.S. at 336. In one canvas bag he felt a brick-like object which proved to be methamphetamine. The Court held that the defendant had a reasonable expectation of privacy in the bag as being free from being handled "in an exploratory manner." *Id.* at 338.

*Bond* is distinguishable. In that case the immigration officer had satisfied himself as to the immigration status of the passengers, and was leaving the bus; his feeling the bags was entirely gratuitous. There was no basis for any further detention of any of the passengers at the time the bags were manipulated. In *Bond*, the passenger bags were manipulated *after* any reason for continued interaction between the police and passengers had ended.

In contrast, the courts have long recognized the right of an officer to conduct a plain touch or plain feel examination of a person during the course of an otherwise valid stop or interaction with a citizen. *See Minnesota v. Dickerson*, 508 U.S. 366 (1993); *Chimel v. California*, 395 U.S. 752 (1969), *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Christian*, 187 F.3d 663, 669 (D.C.Cir. 1999) (officer entitled to open bag found in front seat of car once he felt what he believed to be firearm inside); *United States v. Williams*, 822 F.2d 1174, 1184 (D.C.Cir.1987) ("no warrant is needed for an opening of a container whose contents become known

through a lawful touching of the outside"). Such searches are allowed on the basis of the desire to protect officers' safety, and "the *Chimel* test is not whether an area was probably accessible to the suspect at the time of the search, but whether it was 'conceivably' accessible." *Christian*, 187 F.3d at 671.

Here, Racy had legitimately stopped Worthon for a traffic offense. At the request of the rental company, the van was being seized since no authorized driver was present. Worthon had agreed to allow Racy to drive him to a motel in Garden City. Racy and Worthon would therefore inevitably remain in close contact for some time. Under these circumstances the strong policy supporting the protection of the lives of law enforcement officers justifies the very limited intrusion of feeling the duffel bags. As the court noted in *United States v. McClinnhan*, 660 F.2d 500, 504 (D.C.Cir.1981), upholding a *Terry* search of the defendant's briefcase, it is not necessary that there be any likelihood of harm. "Merely separating [defendant] from his briefcase ... would obviate the danger only for the length of the stop; at some point [the officers] would be compelled to return the briefcase to appellant and thus place themselves in the danger they sought to avoid." *Id.* at 504.

By the time the duffel bag was handled by Racy, there was a legitimate basis for a plain feel touching of the bag to protect officer safety. Under the circumstances of the case, Racy would have to remain in contact with Worthon for some additional time. The officers' information relating to possible drug activity or other criminality may not have risen to the level of a reasonable suspicion at the time of the original traffic stop, but that earlier suspicion of possible drug activity would have been augmented by the information gained during the stop. That is, Racy learned further that the vehicle was rented, that it was rented to an absent third person, that the driver was not an authorized person to drive the vehicle, that the driver's travel plans were inconsistent with the date the vehicle

was scheduled to be returned, that the driver appeared to be speaking with an intent to deceive (by falsely stating he had no credit card), and that the rental company wanted the van impounded.  Under these circumstances, Racy could have reasonably suspected that either there was drug activity afoot or he was dealing with a potentially stolen car.  The brief touching of the outside of the bags in the van for the purpose of detecting possible weapons did not violate the constitutional rights of the defendants.  The court further finds no basis for concluding that the defendants' constitutional rights were otherwise violated under circumstances of the case.

IT IS ACCORDINGLY ORDERED this 15th day of September, 2006 that the defendants' Motions to Suppress (Dkt. Nos. 44, 45) are hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE